# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Joseph Sottolano | ) | ASBCA Nos. 59081, 60043 |
| | ) | |
| Under Contract No. ODIA-10-04-009 | ) | |

APPEARANCE FOR THE APPELLANT: Michael H. Sussman, Esq.
Sussman & Watkins
Goshen, NY

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Erica S. Beardsley, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

### INTRODUCTION

Appellant, Joseph Sottolano, appeals from the termination for cause of a baseball-coaching contract between him and the Army Athletic Association (the Fund), a non-appropriated fund instrumentality, and from the denial of his claim for breach damages allegedly arising from that termination. We deny the appeals.

### FINDINGS OF FACT

Effective 1 July 2010, Mr. Sottolano and the Fund entered into Contract No. ODIA-10-04-009 (the contract, or the 2010 contract), for his services as "Head Baseball Coach, United States Military Academy [USMA]," from 1 July 2010 through 30 June 2014 (R4, tab 1 at 1, 5, ¶ 5.01(a)). The contract's Disputes clause states that the contract is not subject to the Contract Disputes Act of 1978, and, at section 9.01(e)(1) of the contract, provides that "[a] claim by the Contractor shall be made in writing and submitted...to the Contracting Officer"; section 9.02 of the contract provides that "[t]he Contracting Officer's decision on claims may be appealed by submitting a written appeal to the Armed Services Board of Contract Appeals" (R4, tab 1 at 11-12).

Section 8.01 of the contract, *USMA Mission is Primary*, provides that:

> The parties agree that, although the Contract is
> sports-related, the primary purpose of the Fund is to
> support the mission of the USMA. The USMA Mission is

"To educate, train, and inspire the Corps of Cadets so that each graduate is a commissioned leader of character committed to the values of Duty, Honor, Country; professional growth throughout a career as an officer in the United States Army; and a lifetime of selfless service to the nation." Accordingly, all the Fund's legal arrangements, including the Contract, are in support of that mission. Thus, the USMA Mission shall have priority in the various provisions of the contract.

(R4, tab 1 at 11) Section 6.01(a) of the contract, *Termination By Fund for Cause*, provides that:

> The Fund shall have the right to terminate the Contract for cause prior to its normal expiration date, or prior to any extended termination date. The term "cause" shall include, in addition to its normally understood meaning in nonfederal employment contracts, any of the following examples:
>
> ....
>
> (5) Conduct of the Contractor seriously prejudicial to the best interests of the USMA, the Fund, or its athletic program or which violates USMA's or the Fund's mission....

(R4, tab 1 at 8-9)

Section 6.01(b) of the contract, *Fund's Obligations Upon Termination for Cause*, provides that:

> In the event the Contract is terminated for cause in accordance with the provisions of Section 6.01(a) hereof, all obligations of the Fund to make further payments and/or to provide any other consideration hereunder shall cease at the end of the month in which such termination occurs. In no case shall the Fund be liable to the Contractor for the loss of any collateral business opportunities or any other benefits.

(R4, tab 1 at 9) In August 2010, the parties modified the contract to provide that:

2

> A one[-]time payment of $5,000 will be paid to the
> contractor at the end of August 2010 in lieu of the
> previously contracted camp payment.

(R4, tab 2)

Mr. Sottolano's involvement with the USMA baseball team dates to 1992, when he began serving as an assistant coach (tr. 1/280). Mr. Sottolano became interim head coach in 2000 (*id.*). Mr. Sottolano saw himself as a role model for USMA baseball players (tr. 1/209), and, by 2013, the USMA athletic department viewed Mr. Sottolano as one of the best college baseball coaches in the United States (tr. 4/59-60). In May 2013, USMA athletic department representatives and Mr. Sottolano began discussions regarding an "extension" of his contract (tr. 4/59). The department's contracting office drafted Contract No. ODIA-13-07-026 (the 2013 contract), dated 17 July 2013, for Mr. Sottolano's services as head baseball coach, to take effect on 1 August 2013 and terminate on 30 June 2018 (ex. 5 at 1, 5, (Art. IV)). Section 10.02 of the 2013 contract, *Requirement of Contracting Officer Signature and Approval*, provides that:

> It is understood and agreed that the Contract shall
> not be effective until executed by a duly authorized
> Contracting Officer on the behalf of the Fund.

(Ex. 5 at 15) Sections 6.01(a)(5) and 8.01 of the 2013 contract, relating to termination by the Fund for violation of the USMA Mission, and reciting the USMA Mission, respectively, are identical to their counterparts in the 2010 contract (ex. 5 at 10, 13; R4, tab 1 at 9, 11). The 2013 contract bears neither the signature of Mr. Sottolano nor that of the contracting officer (ex. 5 at 16).

On a Monday in May of 2013, at approximately 4:30 p.m., Mr. Sottolano, by his own admission, willingly received oral sex from a subordinate, the baseball program's primary administrative assistant, in his USMA office (tr. 1/218, 225-29, 258, 272-73, 4/170-71). According to Mr. Sottolano, that day was his day off, and the encounter occurred just after the administrative assistant had ended her workday (tr. 1/225, 258). He admits that he could have stopped the encounter, but did not (tr. 4/170-71). We assume without deciding that the encounter was consensual.

On 2 August 2013, Mr. Sottolano and the administrative assistant had an argument in the athletic department's offices involving why she had not sent recruiting letters to potential USMA baseball players, as Mr. Sottolano had expected (tr. 1/237-41). On 5 August 2013, the administrative assistant reported to USMA that she felt threatened by Mr. Sottolano (R4, tab 12 at 3). On the same day, the USMA Executive Athletic Director ordered Mr. Sottolano to refrain from contact with the

administrative assistant (R4, tab 7). On 12 August 2013, Mr. Sottolano was put on administrative leave (R4, tab 9).

On 24 September 2013, subsequent to a series of investigations conducted by USMA and other government entities (R4, tabs 11, 12), the contracting officer terminated the contract for cause (R4, tab 13 at 1). The contracting officer (who did not investigate the matter herself but relied upon information arising from the investigation of others), found, among other things, that Mr. Sottolano had "conducted [him]self in an inappropriate relationship with a female government employee assigned to assist [him] in the performance of [his] duties and responsibilities," "engaged on several occasions in sexual activity with the female employee staff member," "demanded sexual activity from the female employee staff member during the official duty day in government facility offices," and "created a hostile workplace environment" (R4, tab 13 at 1; see tr. 3/20-27, 95-96). Among other contract provisions, the contracting officer cited section 6.01(a)(5) (R4, tab 13 at 2). On 16 December 2013, Mr. Sottolano filed an appeal docketed as ASBCA No. 59081, challenging the termination decision.

On 5 May 2015, Mr. Sottolano presented to the contracting officer a certified claim in the amount of $2,844,902, for damages allegedly arising from the contract termination (R4, tab 43).[1] The claim consists of a list of damages categories and amounts, including $55,000 for "[s]ummer camp salary" (id.). The contracting officer denied the claim on 12 June 2015 (R4, tab 44). Mr. Sottolano timely appealed from the contracting officer's final decision on 16 June 2015. The Board docketed that appeal as ASBCA No. 60043, consolidated that appeal with ASBCA No. 59081, and held a five-day hearing in August 2015.

## DECISION

*ASBCA No. 59081: Termination of the contract for cause*

The Fund must prove that the termination for cause is justifiable. *See ADT Construction Group, Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312, 173,315. If the Fund establishes a *prima facie* case of cause for termination, Mr. Sottolano must prove that the default was excusable, or that the termination decision was an abuse of discretion. *See id.* at 173,312.

---

[1] On 22 April 2015, the Board dismissed for lack of jurisdiction ASBCA No. 59777, an appeal from the deemed denial of a similar, 5 May 2014 request for monetary damages that Mr. Sottolano had submitted to the contracting officer. *Joseph Sottolano*, ASBCA No. 59777, 15-1 BCA ¶ 35,970 at 175,733. We reject any suggestion by Mr. Sottolano (app. br. at 1-2 & n.1, 4) that ASBCA No. 59777 somehow survived that dismissal.

4

*Whether the termination was justifiable*

The Fund asserts several justifications for the termination of the 2010 contract,[2] including that Mr. Sottolano created a hostile work environment (*see* gov't br. at 54-61). In addition, the Fund asserts that Mr. Sottolano violated the USMA's mission by having oral sex with his administrative assistant in his office (*see* gov't br. at 57-59). Although the Fund contends that the sexual activity between Mr. Sottolano and the administrative assistant was not consensual, it argues in the alternative that the termination was justified even if the activity was consensual (gov't br. at 60-61). As explained below, we agree with the latter assertion; therefore, we need not decide whether Mr. Sottolano created a hostile work environment, whether the administrative assistant consented to the May 2013 sexual activity, or whether (as the parties dispute) the administrative assistant's accounts of events are credible.

The contract provides that "the USMA Mission shall have priority in the various provisions of the contract," and gives the Fund "the right to terminate the contract for cause," including for "[c]onduct of the Contractor...which violates USMA's...mission" (R4, tab 1 at 89). The contract goes further, expressly reciting the USMA Mission as:

> To educate, train, and inspire the Corps of Cadets so that
> each graduate is a commissioned leader of character
> committed to the values of Duty, Honor, Country;
> professional growth throughout a career as an officer in the
> United States Army; and a lifetime of selfless service to
> the nation.

(R4, tab 1 at 11) We find the contract's recitation of the USMA Mission unambiguous and self-explanatory, and hold that conduct that is inconsistent with that mission statement violates the USMA Mission.

Consistent with the USMA Mission, Mr. Sottolano viewed himself as a role model for his baseball players. However, when he willingly received oral sex in a USMA office from a subordinate during what is, conventionally, a workday, he

---

[2] We reject any suggestion that the Fund and Mr. Sottolano entered into the 2013 contract. That document expressly requires execution by a contracting officer to take effect, and no contracting officer ever signed the 2013 contract. Consequently, the 2013 contract did not replace or "extend" the 2010 contract. Even if it had, we cannot see how events would have transpired differently or changed the outcome of these appeals, particularly given that sections 6.01(a)(5) and 8.01 of both contracts are identical.

violated the USMA Mission, to which the contract gives priority, providing cause for his termination. Mr. Sottolano's conduct was inconsistent with the mission's goal of inspiring USMA cadets to be "leader[s] of character" committed to professional growth, and selfless service, and the values of duty and honor.[3] Rather, that conduct exemplifies self-indulgent lack of professionalism. It is inconceivable that one would hold that conduct up to a USMA baseball player as an example of how, in the future, he should conduct himself as an officer in the United States Army, in his workplace, with a subordinate. Given his candid and evidently remorseful admission to what happened, we expect that Mr. Sottolano himself would counsel the baseball players he coached not to conduct themselves as he did.

Although he does not bear any burden of proof on the issue, we note that Mr. Sottolano is essentially silent regarding the Fund's contention that when he received oral sex in his USMA office from his administrative assistant at approximately 4:30 p.m. on a weekday, he violated USMA's mission. Mr. Sottolano contends that "[h]aving consensual sexual relations is NOT violative of the military's mission," and states that "having sexual contact [does not] directly conflict with the military's mission" (app. reply br. at 25). However, he does not directly address whether doing so where, when, and with whom he engaged in that behavior violates the USMA Mission. Because we find that Mr. Sottolano's conduct violated the USMA Mission, the termination of his contract was justifiable.

*Whether Mr. Sottolano's default was excusable*

Mr. Sottolano offers no excuse for his behavior; rather, he admitted that he could have stopped the encounter, but did not. We find that Mr. Sottolano has not proved that his violation of the USMA's Mission was excusable.

*Whether the contracting officer abused her discretion*

Mr. Sottolano contends that in terminating the contract for cause, the contracting officer acted in bad faith and abused her discretion (app. 2nd reply br. at 27-33). The burden of proof to show abuse of discretion is very high. *Empire Energy Management Systems, Inc.*, ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553. To determine whether a termination was an abuse of discretion, the Board considers 1) whether the government official acted with subjective bad faith; 2) whether the official had a reasonable, contract-related basis supporting the decision under review; 3) the amount of discretion vested in the official whose action is being reviewed; and

---

[3] We so conclude even assuming, as Mr. Sottolano contends, that the Monday the incident occurred was his day off, and that the administrative assistant's workday had just ended. We find drawing such fine distinctions inconsistent with the sweeping language of the USMA Mission.

4) whether a proven violation of relevant statutes or regulations can render a decision arbitrary and capricious. *Id.* Government agents are presumed to discharge their duties in good faith, and a party alleging "bad faith" or "bad intent" can overcome this presumption only by clear and convincing evidence. *SIA Construction, Inc.*, ASBCA No. 57693, 14-1 BCA ¶ 35,762 at 174,986. To overcome this presumption, a contractor must show with convincing clarity a high probability that the government official acted from personal animus with specific intent to injure the contractor. *See Empire Energy*, 03-1 BCA ¶ 32,079 at 158,553.

Mr. Sottolano fails to demonstrate that the contracting officer abused her discretion. First, Mr. Sottolano fails to overcome the presumption that the contracting officer acted in good faith; he neither asserts nor points to any evidence that the contracting officer terminated Mr. Sottolano's contract out of personal animus toward him.

Second, the contracting officer had a reasonable, contract-related basis supporting her decision. Among the contracting officer's reasons for terminating the contract was her finding that Mr. Sottolano engaged in sexual activity with an employee staff member, although the contracting officer found that he had done so on several occasions. Similarly, we have found that the single encounter to which Mr. Sottolano admitted violated the USMA Mission, providing cause to terminate the contract. Third, the contract does not expressly limit the contracting officer's discretion to terminate the contract for cause. Finally, Mr. Sottolano does not assert that the termination decision violated any statute or regulation.

In essence, Mr. Sottolano contends that the contracting officer abused her discretion because, in his view, she was ill- or under-informed, relied on erroneous or otherwise flawed information from others rather than conducting her own investigation, did not weigh the evidence correctly, decided to terminate the contract prematurely (and weeks before she issued her decision), offered testimony during the hearing that conflicted with her deposition testimony and the testimony of others, and did not explain her decision well (app. 2nd reply br. at 27-33, 37). We disagree that any of those issues, alone or in combination, demonstrates an abuse of her discretion. A contracting officer's assessment need not be correct or based upon perfect information in order to constitute a valid exercise of discretion. *See ADT Construction*, 13 BCA ¶ 35,307 at 173,314-15. Nor does the contracting officer have to have conducted her own investigation; all that is required is that she put her mind to the problem and render her own decision, even if in doing so she relies upon information from others. *See Pacific Architects & Engineers, Inc. v. United States*, 491 F.2d 734, 744 (Ct. Cl. 1974); *Space Age Engineering, Inc.*, ASBCA No. 25761 *et al.*, 86-1 BCA ¶ 18,611 at 93,451-52. Here, the contracting officer learned from others that Mr. Sottolano had engaged in sexual activity with an employee staff member in his USMA office during what the contracting officer understood was a workday. Her information was essentially correct (Mr. Sottolano admitted to that basic story), even if

7

she had some of the details wrong, came to incorrect legal conclusions, provided testimony that conflicted with her previous accounts and the accounts of others, arrived at a decision before she had all the information, and could have explained her decision better. Notably, Mr. Sottolano does not even suggest that the contracting officer failed to put her mind to the problem or make her own decision;[4] essentially, he complains about how she made that decision and later defended it. We have found that when Mr. Sottolano received oral sex in his USMA office from his administrative assistant at approximately 4:30 p.m. on a weekday, he violated USMA's mission, justifying the termination of his contract. Nothing that Mr. Sottolano points to regarding how the contracting officer arrived at essentially the same conclusion, or how she explained it, demonstrates that she abused her discretion.

Mr. Sottolano also contends that the contracting officer did not terminate the contract on the basis of consensual sexual activity (app. br. at 116; app. reply br. at 27). While the contracting officer found that Mr. Sottolano "demanded sexual activity," she also found that he "engaged...in sexual activity," a formulation that is not, on its face, dependent upon coercion. In any event, a party can justify a termination if there existed at the time an adequate cause, even if then unknown. *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1277 (Fed. Cir. 1985). Here, regardless of whether the contracting officer terminated the contract based upon consensual sexual activity, the Fund has expressly contended that Mr. Sottolano's behavior justified the termination of his contract even if the sexual activity was consensual (*see* gov't br. at 61), an argument that is also not dependent upon a demonstration of coercion. Here, in deciding that Mr. Sottolano's conduct justifies the termination of his contract, we have assumed, without deciding, that the sexual activity at issue was consensual.

Because Mr. Sottolano violated USMA's mission and has not proved that his default was excusable, or that the termination of his contract was an abuse of discretion, the termination of his contract for cause was justified. Consequently, we deny ASBCA No. 59081.

*Damages*

Because the termination of the contract for cause was justified, any recovery by Mr. Sottolano is governed by section 6.01(b) of the 2010 contract. That section provides that the Fund's payment obligations ended at the end of the month in which the

---

[4] In his recitation of the contracting officer's testimony, Mr. Sottolano puts the term "her decision" in quotation marks (app. br. at 67), but never expressly contends that the contracting officer did not exercise her independent judgment in terminating the contract.

8

termination occurred. The termination occurred on 24 September 2013; consequently, the Fund's payment obligations to Mr. Sottolano ended on 30 September 2013. Mr. Sottolano does not contend that the Fund owes him money under section 6.01(b); rather, he contends that the Fund owes him breach damages, consisting of what he would have earned under the 2010 contract had it not been terminated, and what he would have earned under the 2013 contract had that document been "fully executed" (app. br. at 126-27). However, having found unexcused cause for the termination of the 2010 contract, and that the termination was not an abuse of discretion, we find that the termination of the contract was not a breach.[5] Consequently, Mr. Sottolano is not entitled to breach damages, and ASBCA No. 60043 is denied.[6]

## CONCLUSION

For these reasons, the appeals are denied.

Dated: 24 March 2016

TIMOTHY P. McILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[5] The parties dispute whether, under the particular terms of the contract, the recovery for a termination for cause that is found to be without "good cause" is breach damages or liquidated damages (gov't br. at 65; app. br. at 125). Because we find the termination for cause justified, we need not resolve that dispute.

[6] We do not consider whether Mr. Sottolano and USMA entered into a written, oral, or implied-in-fact contract separate from the 2013 contract for him to run a summer baseball camp in July 2013, or to extend his 2010 contract, as his post-hearing briefing at least to some extent suggests (app. br. at 121, 127-28; app. reply br. at 35; app. 2nd reply br. at 22-25). No such claims have been presented to the contracting officer, as required by section 9.01(e)(1) of the 2010 contract; consequently, we do not possess jurisdiction to entertain them. In addition, although Mr. Sottolano points to testimony of the contracting officer in support of a suggestion that the summer camp was the subject of a signed modification to the 2010 contract (app. 2nd reply br. at 22-23), we find in the record only an August 2010, signed modification providing for payment of $5,000 for a camp ostensibly held in 2010, not any modification relating to a 2013 camp.

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59081, 60043, Appeals of Joseph Sottolano, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10